2016 IL App (3d) 150655

Opinion filed June 10, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| WILLIE PEARL BURRELL TRUST, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-15-0655 |
| | ) | Circuit No. 13-MR-683 |
| CITY OF KANKAKEE, an Illinois | ) | |
| Municipal Corporation, | ) | Honorable |
| | ) | Kendall O. Wenzelman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion
Justices Schmidt and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, the Willie Pearl Burrell Trust, appeals from the trial court's granting of

summary judgment in favor of defendant, the City of Kankakee. Plaintiff contends that certain

genuine issues of material facts remain in regard to its *mandamus* claim. Additionally, plaintiff

argues that it was itself entitled to summary judgment on its constitutional claims. Specifically,

plaintiff maintains that defendant violated its right to due process by not providing notice and a

hearing prior to its nonrenewal of plaintiff's rental licenses. Plaintiff also claims defendant

imposed an unconstitutional condition upon the renewal of those licenses. We affirm.

## FACTS

Plaintiff owns several properties in the City of Kankakee and sought to rent those properties to tenants. Pursuant to City ordinance, plaintiff successfully procured rental licenses for those properties. The rental licenses on the properties in question expired between June 2011 and November 2013, at which times plaintiff applied for renewal of the licenses.

Defendant took no action on plaintiff's applications, neither approving nor denying them. This inaction occurred in reliance on a City ordinance prohibiting the issuance of any license to any party indebted to the City. See Kankakee Municipal Code § 21-02. Records showed that plaintiff owed defendant a sum of $43,866.68.[1] The money owed by plaintiff was a result of a series of tickets issued for violations of the Kankakee Municipal Code (Municipal Code), dating as far back as 2003. Plaintiff claimed that the properties were in compliance with the ordinance governing rental licenses. See Kankakee Municipal Code § 8-02-112.

In a complaint filed on October 3, 2013, plaintiff sought a writ of *mandamus* that would compel defendant to comply with the rental license ordinance and act upon plaintiff's rental license applications. Alternatively, plaintiff alleged that the ordinance prohibiting the issuance of licenses to parties indebted to the City stood as an unconstitutional condition.

---

[1]An exhibit filed by plaintiff with its complaint showed an amount owed to defendant of $43,866.68. Kankakee code official Clifford Cross, in an affidavit filed by defendant, stated that plaintiff owed that same amount. A later affidavit filed by defendant declared an amount owed of $26,516.62. Plaintiff's sole beneficiary later averred that defendant, through its counsel, informed her that the outstanding debt was $41,285.77. In any event, the parties agreed that a sum of money is owed by plaintiff to defendant.

¶ 6    On April 21, 2014, plaintiff filed a motion for summary judgment, which the trial court denied. Defendant subsequently filed its own motion for summary judgment. In response, plaintiff cross-petitioned its second motion for summary judgment. Plaintiff attached to its motion an affidavit from Willie Pearl Burrell, plaintiff's sole beneficiary, dated June 10, 2015. In the affidavit, Burrell averred that defendant had informed her that she owed a sum of $41,285.77. Burrell further averred that when she attempted to tender payment in that amount, defendant, through City Attorney L. Patrick Power, "refused to accept [Burrell's] payment because [she] made it clear that the tender was made under protest, and [she] intended to file suit against [defendant]." In her deposition, Burrell explained that she wanted to get her rental licenses, and believed that if she paid under protest she would get her money back after a lawsuit. She testified that when she attempted to make the payment, Power told her to take the check back and "go get us half." According to Burrell, Power explained that the City was "trying to work with the landlords."

¶ 7    Plaintiff's counsel addressed the issue of the attempted payment at arguments on the summary judgment motions:

> "And then, your Honor, my client goes to the city with $41,000 and change and says, here, here's your money. Please give me the rental license applications. And the city says oh, no, we can't possibly do that. Oh, you know why, because we're going to work with everybody, not just you, but we're going to work with all the landlords. Well, [Y]our Honor, in their brief there's no ordinance that gives the city or the city attorney any unilateral authority to negotiate with people who allegedly owe the city money. There's no authority in any ordinance to refuse payment of fines. On what basis? On what basis, your Honor, would the city turn

3

back a certified check for over $41,000 if they weren't playing games with the plaintiff?"

The trial court granted defendant's motion for summary judgment on August 18, 2015.

¶ 8                                        ANALYSIS

¶ 9        On appeal, plaintiff argues (1) that the trial court's granting of summary judgment for defendant on plaintiff's *mandamus* claim was improper where a number of genuine issues of material fact existed in relation to that claim.  Plaintiff further contends that it was entitled to a judgment as a matter of law on its claims that (2) defendant deprived plaintiff of due process and that (3) defendant placed an unconstitutional condition upon the issuance of rental licenses.  We reject each argument in turn.

¶ 10       Under section 2-1005 of the Code of Civil Procedure, summary judgment shall be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2010).  " 'A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts.' "  *Danhauer v. Danhauer*, 2013 IL App (1st) 123537, ¶ 35 (quoting *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999)).  In cases involving summary judgment, we conduct a *de novo* review of the evidence on the record.  *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 185 (2002).  In our review, we "construe the facts strictly against the moving party and in the light most favorable to the nonmoving party."  *Id.* at 186.

4

¶ 11        Chapter 21, article I of the Municipal Code is entitled "Licenses Generally."  Kankakee Municipal Code § 21-02.  Section 21-02 of that article prohibits the issuance of any required license to a party indebted to the City.  *Id*.  Specifically, this section holds:

> "No licenses required by this Code for the engaging in any business or the sale of any article shall be issued to any person who is indebted to the City, or any department thereof or who is indebted to the City for any fine or penalty adjudged against such person for the violation of any ordinances of the City, unless the indebtedness or the fine or penalty is first paid."  *Id*.

¶ 12        Section 112.1 of the Kankakee Property Maintenance Code holds that "[n]o person, corporation, or other entity shall rent *** any dwelling unit *** unless the City of Kankakee has issued a current unrevoked operating license *** for the specific dwelling unit."  *Id.* § 8-17-112.1.  Section 112.2 of the Property Maintenance Code holds that

> "[a]n initial operating license shall be issued upon the inspection of the premises and the determination by the City of Kankakee that the premises are in compliance with the applicable Property Maintenance, Fire and Life Safety Codes as amended.  Upon the issuance of an initial license, every operating license, with the exception of Section 8 properties which shall require a 1 year annual operating license, shall be issued for a period of 2 years from its date of issuance, unless sooner revoked as provided pursuant to the applicable sections of this code.  "  *Id*. § 8-17-112.2.

An otherwise unexpired license may be revoked when "any dwelling unit within a rental building fails to meet all applicable requirements of all codes of the City of Kankakee and statutes of the

5

State of Illinois." *Id*. § 8-17-112.13. Upon receiving a notice of revocation, the property owner may appeal the revocation. *Id*.

¶ 13    Section 112.19 of the Property Maintenance Code, entitled "Renewal of license," holds:

"No operating license may be renewed unless an application therefore has been made prior to the expiration of the existing operating license. In the event that a license is sought after the expiration date of the current license, the applicant for the license shall pay an additional fee of $100.00 dollars for said license. Upon payment of the fee and the property being determined to be in compliance with all applicable rules and regulations and ordinances of the City of Kankakee and statutes of the State of Illinois, a license will thereupon be issued." *Id*. § 8-17-112.19.

¶ 14    Section 112 of the Building Code governs appeals. *Id.* § 8-02-112.1. That section holds:

"1. An appeal of any decision or determination of authorized city staff must be submitted in writing to the Code Official within 10 days of the date of mailing thereof. The Code Official shall then notify the authorized owner or agent of the administrative decision on the appeal within 10 days of receiving the written appeal request. The decision of the Code Official constitutes the final administrative action of the City.

2. Any person or entity seeking review of any tickets issued by authorized city staff for violation of this code may appear before the Adjudication Court. The decision of the Adjudication Court shall constitute the final administrative act of the City." *Id*.

¶ 15    I. *Mandamus*

6

¶ 16    The writ of *mandamus* is an extraordinary remedy used to compel "the performance by a public officer of nondiscretionary official duties." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009). *Mandamus* will only issue where the petitioner has shown: (1) a clear right to the relief requested; (2) a clear duty of the public officer to act; and (3) a clear authority on the part of the officer to comply with the writ. *Id*. at 193. *Mandamus* will not be awarded in a doubtful case. *Kramer v. City of Chicago*, 58 Ill. App. 3d 592, 599 (1978). "Where the plaintiff seeks issuance of a permit, the plaintiff must show complete compliance with ordinances before the writ will issue." *Id*. "Where the performance of an official duty or act involves the exercise of judgment or discretion, the officer's action is not subject to review or control by *mandamus*." *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185 (1981).

¶ 17    Plaintiff argues that under section 112.2 of the Property Maintenance Code, defendant has a duty to issue rental licenses for the properties in question. In support of its argument, plaintiff emphasizes that section 112.2 holds that the licenses "*shall* be issued" if the property is in compliance with property maintenance, fire, and life safety codes (emphasis added) (Kankakee Municipal Code § 8-17-112.2), and that defendant does not dispute that those properties are in compliance with those codes. To the extent that section 21-02 of the Municipal Code would bar plaintiff from being issued the licenses due to its indebtedness, plaintiff argues that it is in conflict with section 112.2 of the Property Maintenance Code, which does not explicitly reference nonindebtedness as a prerequisite for a rental license. Plaintiff urges that this conflict must be resolved in favor of the more specific provision, section 112.2 of the Property Maintenance Code. Upon review, we find that there is no conflict between the two sections of

7

the Municipal Code at issue, and that plaintiff has failed to show a clear duty on the part of defendant to issue rental licenses.

¶ 18        Initially, we note that plaintiff has vacillated as to what remedy it seeks. On one hand, plaintiff argues that it "is entitled to a writ of *mandamus* ordering [defendant] to issue the rental license permits." On the other hand, plaintiff argues that "[t]he writ of *mandamus* would be for [defendant] to *process* the rental license applications, and if the properties passed the code inspection, to issue the rental license." (Emphasis added.) However, plaintiff, in its original complaint, asserts that defendant's "refusal to process rental license applications is tantamount to a denial of said permits," and we agree. Plaintiff has made no argument that defendant's denial by inaction is functionally any different than some more formal denial. In fact, plaintiff recognizes that "[i]n the event that [defendant] is not going to process the applications, the ordinance allows for the appeal of a denial." See also Kankakee Municipal Code § 8-02-112.1 (setting forth appeal procedures). Further, to the extent that there is any practical difference between a denial by inaction and a more formal denial, the election between the two methods of denial is apparently wholly discretionary, and thus not appropriate for *mandamus*. *Konetski*, 233 Ill. 2d at 192-93. Accordingly, we will proceed under plaintiff's argument that a *mandamus* writ should issue compelling defendant to issue the licenses.

¶ 19        It is a well-settled tenet of statutory construction that a court's primary objective is to ascertain and effectuate the overall intent of the drafters. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458 (2002). "Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible. [Citation.] Even when an apparent conflict between statutes exists, they must be construed in harmony with one another if reasonably possible." *Id*. at 459. Municipal

8

ordinances are also interpreted using these basic principles of statutory construction. *E.g.*, *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 850 (2007).

¶ 20 The ordinances at issue in the present case can reasonably be read in harmony with one another. The plain language of section 21-02 makes clear that the drafters intended any debt owed to the City to bar the debtor from receiving a business license. It is equally clear that section 21-02 was intended to apply to *any* license required by the Municipal Code for the conducting of business, including a rental license. While section 112.2 of the Property Maintenance Code does not *explicitly* reference section 21-02, this should not be read as an implication that section 21-02 is inapplicable. Section 21-02 is plainly a threshold requirement that *all* license applicants must meet. Section 112.2 of the Property Maintenance Code simply adds *further* requirements for the acquisition of rental licenses. The drafters need not have rewritten the requirements of section 21-02 into each individual licensing ordinance in order for that section to have effect.

¶ 21 Under section 21-02, plaintiff was ineligible to receive rental licenses from defendant. Plaintiff is thus unable to demonstrate either that it has a right to rental licenses, or that defendant has a duty to issue licenses to it. Indeed, under section 21-02, defendant would not even have authority to issue the licenses. Similarly, plaintiff cannot demonstrate that it is entitled to a more formal denial of its application, or that defendant is obligated to provide such a denial. Accordingly, the writ of *mandamus* would not issue, and the trial court properly granted summary judgment on the issue in favor of defendant.

¶ 22 Plaintiff maintains that a determination of whether *mandamus* should issue turns on a number of unresolved questions of material fact, and that summary judgment was thus improper. First, plaintiff asserts that:

9

"[t]he reasons as to why [defendant] kept issuing rental licenses to the Plaintiff when the Plaintiff allegedly owed money to [defendant] remains a material question of genuine fact. That is, why had [defendant] issued rental licenses between 2003 and 2013 when the City Ordinance supposedly forbids the same? Did [defendant] waive its right to enforce Section [21-02]?"

¶ 23    Whether defendant waived its ability to enforce section 21-02 is not a question of fact, but of law. See, *e.g.*, *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004). Though plaintiff has provided no legal citation in support of any waiver argument, we note that it is well-settled that the failure to previously enforce an ordinance does not repeal that ordinance, nor does it create grounds to attack the ordinance. See *City of Metropolis v. Gibbons*, 334 Ill. 431, 437 (1929); *Cleaners Guild of Chicago v. City of Chicago*, 312 Ill. App. 102, 124-25 (1941).

¶ 24    Plaintiff next claims that factual questions relating to its attempted payment to defendant—and defendant's purported refusal to accept that payment—remain unresolved. Specifically, plaintiff contends that whether it made an effort to tender payment in full is a question of material fact that should preclude summary judgment.[2] Though the record is not well-developed on this issue, we will construe all facts in favor of plaintiff. See *Happel*, 199 Ill. 2d at 186. In this instance, then, we will assume that Burrell did attempt to pay plaintiff's debt in full under protest, and that defendant refused said payment.

---

[2]Plaintiff, in its brief, asserts that Power—in his own affidavit—denied refusing Burrell's payment. The record does not support this assertion, however. Power's affidavit, filed more than a month prior to Burrell's, makes no reference to any attempt by Burrell to pay plaintiff's debt.

10

¶ 25    Even construing these facts in plaintiff's favor, plaintiff has failed to show the existence of a genuine issue of material fact. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). First, plaintiff has provided no citation to legal authority supporting its implicit premise: that defendant either did not have the discretion to refuse payment made under protest, or that defendant did have that discretion, but abused it. The result of defendant's apparent refusal to accept payment was that plaintiff still owed money to defendant. Section 21-02 would thus bar defendant from issuing any license, and, in turn, prevent the issuance of a *mandamus* writ compelling defendant to do so. Plaintiff, of course, might still pursue other avenues of relief—such as appealing its debts pursuant to the Municipal Code (see Kankakee Municipal Code § 8-02-112.1) or seeking a *mandamus* writ compelling defendant to accept payment. However, the only relief sought in the present complaint was a *mandamus* writ compelling defendant to issue rental licenses. For the reasons discussed above, defendant would not have the authority to do so under section 21-02.

¶ 26                                    II. Due Process

¶ 27    Plaintiff next contends that the nonrenewal of its rental licenses was tantamount to a revocation of those licenses. Plaintiff argues that it holds a property interest in the licenses, and that defendant's deprivation of that interest without notice and hearing violated principles of due process. Upon review, we find that plaintiff does not have a protectable property interest in the renewal of its rental licenses. Accordingly, defendant was not required to provide due process safeguards attendant to its nonrenewal of those licenses.

11

¶ 28	"Procedural due process claims concern the constitutionality of the specific procedures employed to deny a person's life, liberty or property. [Citation.] Procedural due process is meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 434 (2000). The threshold question in any such analysis is whether the plaintiff has a protectable property interest with which the State has interfered. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415 (1997).

¶ 29	In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the United States Supreme Court discussed what interests are protected by the due process clause. The Court stated: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577. A legitimate claim of entitlement arises from state statute, regulation, ordinance, or contract. *Suburban Downs, Inc. v. Illinois Racing Board*, 316 Ill. App. 3d 404, 413 (2000); see also *Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("[T]he sufficiency of the claim of entitlement must be decided by reference to state law."). In *Roth*, the Court held that a public employee appointed to a one-year term had no property rights in continued employment beyond that period where no statute, rule, or policy secured an interest in being reappointed. *Roth*, 408 U.S. at 578. By contrast, a public college professor who has acquired tenure or a public employee terminated within the term of their employment contract "have interests in continued employment that are safeguarded by due process." *Id.* at 577 (citing *Slochower v. Board of Higher Education*, 350 U.S. 551 (1956) and *Wieman v. Updegraff*, 344 U.S. 183 (1952)).

¶ 30    The Municipal Code does not create a protectable property interest in rental licenses beyond the one- or two-year period for which those licenses are issued. The Municipal Code unambiguously provides that a rental license is valid for one or two years, and that a property owner must reapply in order to secure a license for another period. Kankakee Municipal Code §§ 8-17-112.2, 8-17-112.19. The renewal requirements are identical to those for receipt of the initial license, as the property must again be "determined to be in compliance with all applicable rules and regulations and ordinances of the City of Kankakee" prior to renewal of the license. *Id*. § 8-17-112.19. Similar to the employee in *Roth*, a property owner in Kankakee can claim no entitlement beyond the one- or two-year period for which a rental license is issued. By contrast, the Property Maintenance Code explicitly provides for notice and appeal rights when a rental license is revoked *within* the licensing period. *Id*. §§ 8-17-112.13, 8-17-112.23. Illinois courts have reached the same conclusion, consistently finding that holders of business licenses do not have a property interest in the eventual renewal of the licenses. *E.g.*, *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 11 ("[A] license holder does not have a protected property interest in the license's renewal."); *Lappin v. Costello*, 232 Ill. App. 3d 1033, 1045 (1992) ("When an ordinance provides for the issuance of a license, a party has no due process right to a renewal or issuance of the license."); *Las Fuentes, Inc. v. City of Chicago*, 209 Ill. App. 3d 766, 770 (1991) ("There is no vested interest, however, in the *renewal* of a liquor license, thus non-renewal of a license, or the denial of a new license, is not subject to due process." (Emphasis in original.)).

¶ 31    Plaintiff argues, however, that the nonrenewal of its rental licenses is equivalent to the *revocation* of those licenses, and thus subject to due process safeguards. In advancing this argument, plaintiff relies extensively on *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir.

13

1983). The *Reed* court considered a municipal ordinance that issued a liquor license for a period of one year. The court began by noting: "The license is good for one year and during that time, clearly, it is securely held, for it can be revoked only for cause, after notice and hearing, and subject to judicial review." *Id*. at 948. The Liquor Control Act of 1934 (235 ILCS 5/1-1 *et seq*. (West 2014)) provided that a licensee could renew a license "provided he is then qualified to receive a license and the premises for which such renewal license is sought are suitable for such purposes." *Reed*, 704 F.2d at 948. The *Reed* court found these criteria for renewal to be "undemanding," and suggestive that the "legislature expected most licenses to be renewed as a matter of course." *Id*. at 948-49. The court concluded: "From here it is only a step to equating nonrenewal with revocation and requiring the same safeguards against arbitrary nonrenewal as the statute expressly provides against arbitrary revocation." *Id*. at 949.

¶ 32         In *Black Knight Restaurant, Inc. v. City of Oak Forest*, 159 Ill. App. 3d 1016, 1019 (1987), the First District declined to follow *Reed*, pointing out that it "directly contradicts controlling Illinois law." We must do the same. See, *e.g.*, *Combs v. Insurance Co. of Illinois*, 146 Ill. App. 3d 957, 962 (1986) ("[D]ecisions by the Federal courts, other than the United States Supreme Court, as to the law of Illinois are not binding on State courts."). The Property Maintenance Code makes it clear that a property owner has a legitimate claim of entitlement to a rental license for a period of one or two years. Kankakee Municipal Code § 8-17-112.2. To equate nonrenewal with revocation would instead establish a claim of entitlement in perpetuity to the license. This is a result plainly not intended by the Municipal Code. Indeed, in the *Reed* court's words, from there it would be "only a step" (*Reed*, 704 F. 2d at 949) to creating a claim of entitlement to the initial issuance of a license in the first place.

14

¶ 33        Moreover, we cannot find that the Property Maintenance Code's requirements for the issuance or renewal of a rental license are "undemanding." In order to obtain such a license, a property must first be in compliance with Property Maintenance Code, Fire Code, and Life Safety Code. Kankakee Municipal Code § 8-17-112.2. In order for the license to be renewed, a reinspection of the premises is necessary to establish compliance with those codes. *Id*. § 8-17-112.6. Given that a building can be expected to gradually degrade over time, and given that an entirely new inspection is necessary for the renewal of a rental license, it would be unreasonable to conclude that the drafters of the Municipal Code "expected most licenses to be renewed as a matter of course." See *Reed*, 704 F.2d at 948-49.

¶ 34                        III. Unconstitutional Condition and Taking

¶ 35        Plaintiff next contends that defendant's demand for repayment of debts owed prior to issuing rental licenses represented an unconstitutional condition, resulting in an impermissible burden upon its right to be free of a taking without compensation. Specifically, plaintiff maintains that because the debt it owed to defendant did not stem from any of the properties for which it sought rental licenses, there did not exist a sufficient nexus between defendant's demand and the licenses requested. Upon review, we find that defendant's actions did not threaten to violate the takings clause, and thus did not constitute an unconstitutional condition.

¶ 36        "The unconstitutional conditions doctrine *** vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Management District*, 570 U.S. ___, ___, 133 S. Ct. 2586, 2594 (2013). Put another way, the doctrine prevents the government from requiring that a party give up a constitutional right "in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the" burden imposed on the party. *Dolan v. City*

15

*of Tigard*, 512 U.S. 374, 385 (1994). The United States Supreme Court has adopted a two-part test for analyzing claims that an unconstitutional condition has been imposed. *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 29. "[F]irst, is there an essential nexus between the condition burdening rights and a legitimate state interest and second, is there a 'rough proportionality' between the burden on the individual and the harm the government seeks to remedy through the condition." *Id.* (quoting *Dolan*, 512 U.S. at 391).

¶ 37        In the present case, defendant has not directly required plaintiff to relinquish any constitutional rights in order to obtain rental licenses. Instead, defendant merely requires plaintiff to pay its outstanding debts. Plaintiff, however, maintains that this payment requirement is in fact an infringement upon its right to be free of a taking without just compensation. See U.S. Const., amend. V. Plaintiff's taking argument is premised solely upon the United States Supreme Court's decision in *Koontz*, 570 U.S. ___, 133 S. Ct. 2586.

¶ 38        In *Koontz*, the plaintiff sought to develop a 3.7-acre portion of his 14.9-acre tract of land. *Id.* at ___, 133 S. Ct. at 2591-92. To mitigate the environmental effects of his development, the plaintiff offered the defendant a conservation easement on the remaining land. *Id.* at ___, 133 S. Ct. at 2592-93. The defendant rejected the proposal. *Id.* at ___, 133 S. Ct. at 2593. As a counteroffer, the defendant proposed that the plaintiff reduce the development to a single acre, and deed a conservation easement on the remaining land. *Id.* at ___, 133 S. Ct. at 2593. Alternatively, the defendant proposed the plaintiff could fund mitigation work several miles away from the land in question. *Id.* at ___, 133 S. Ct. at 2593.

¶ 39        The *Koontz* court, relying on the unconstitutional conditions doctrine, found that the defendant's demands were constitutionally impermissible. The Court relied upon its previous decisions in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan*, each of

which " 'involve[d] a special application' of [the unconstitutional conditions] doctrine that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits."  *Koontz*, 570 U.S. at ___, 133 S. Ct. at 2594 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547 (2005)).  The Court explained that this "special application" was necessary given that land use permit applicants are especially vulnerable to unconstitutional conditions

> "because the government often has broad discretion to deny a permit that is worth far more than property it would like to take.  By conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation."  *Id.* at ___, 133 S. Ct. at 2594.

The Court further recognized that "[e]xtortionate demands of this sort frustrate the Fifth Amendment right to just compensation, and the unconstitutional conditions doctrine prohibits them."  *Id.* at ___, 133 S. Ct. at 2595.

¶ 40        In *Nollan* and *Dolan*, the Court had concluded that a demand for property is, in fact, a requirement that the party give up a constitutional right.  In *Koontz*, the Court held that demands for money in the same context were likewise impermissible.  *Id*. at ___, 133 S. Ct. at 2596.  The *Koontz* court also explained that the injured party need not acquiesce to the government's demands for a constitutional violation to occur:

> "Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just

17

compensation. As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury." *Id*. at ___, 133 S. Ct. at 2596.

¶ 41    The Illinois Supreme Court has held that a takings clause analysis is not applicable to a municipality's imposition of a certain fee unless that fee is "inextricably tied to real property." *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 83 (2008). In so holding, our supreme court relied in part upon the United States Supreme Court case of *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), a case in which a majority of the justices concluded that a government imposed payment obligation could not be a taking. *Id*. at 540 (Kennedy, J., concurring in the judgment and dissenting in part).

¶ 42    In *Eastern Enterprises*, Justice Kennedy—taking a position joined by four other Justices—wrote that while the statute in question imposed "a staggering financial burden" on the petition by requiring it to pay benefits, the statute did "not appropriate, transfer, or encumber an estate in land (e.g., a lien on a particular piece of property), a valuable interest in an intangible (e.g., intellectual property), or even a bank account or accrued interest." *Id.* Justice Kennedy concluded: "To call this sort of governmental action a taking as a matter of constitutional interpretation is both imprecise and, with all due respect, unwise." *Id.* Justice Breyer further explained that the property "upon which the [Takings] Clause traditionally has focused is a specific interest in physical or intellectual property[,]" and that characterizing "an ordinary liability to pay money" as a governmental taking would have an inordinately broad application to ordinary taxes and statutes. *Id.* at 554 (Breyer, J., dissenting, joined by Stevens, Souter, and Ginsburg, JJ.).

18

¶ 43    In *Koontz*, the Court accepted the position of the majority in *Eastern Enterprises*, but found that position was not controlling where the demand for money operated upon an identified property interest and the "monetary obligation burdened petitioner's ownership of a specific parcel of land." *Koontz*, 570 U.S. at ___, 133 S. Ct. at 2599. The *Koontz* holding was thus similar to that of our supreme court in *Empress Casino*, where it allowed that a monetary obligation "inextricably tied to real property" can be a taking. *Empress Casino*, 231 Ill. 2d at 83.

¶ 44    In the present case, defendant's "demand" for the money it is owed is not inextricably tied to real property, nor does it burden plaintiff's ownership of a *specific* parcel of land. Defendant's demand for money stems from section 21-02, a generally applicable ordinance that bars any license applicant from receiving a license if they owe money to the City of Kankakee. Defendant's requirement of payment before licenses will be issued to plaintiff is thus not the sort of *ad hoc* demand contemplated in *Koontz*, but simple compliance with a straightforward ordinance. Section 21-02 and its enforcement is in no way tied to the property plaintiff owns throughout the City; the ordinance bars plaintiff from receiving *any* type of license. Further, while plaintiff's inability to procure a rental license certainly impacts the use of its property, it cannot be said that the debt payment requirement targets a "specific parcel of land." *Koontz*, 570 U.S. at ___, 133 S. Ct. at 2599. To be sure, any party who is denied any license by operation of section 21-02 will face *some* burden, in that whatever opportunities that license would provide are lost. To characterize any enforcement of section 21-02 as a taking, however, would go far beyond the holding in *Koontz*. *Id*. at ___, 2601 ("This case therefore does not affect the ability of governments to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners.").

19

¶ 45    In sum, defendant's requirement, codified in section 21-02, that plaintiff pay its debts before rental licenses are issued cannot be characterized as a taking.  Only where a constitutional right has been burdened is the nexus-proportionality test for unconstitutional conditions applicable.  As plaintiff's unconstitutional condition argument is premised upon a violation of the takings clause, it follows that plaintiff's argument must fail.

¶ 46                                    CONCLUSION

¶ 47    The judgment of the circuit court of Kankakee County is affirmed.

¶ 48    Affirmed.