# Illinois Official Reports

## Supreme Court

---

**McElwain v. Office of the Illinois Secretary of State, 2015 IL 117170**

---

| | |
|---|---|
| Caption in Supreme Court: | KEVIN McELWAIN, Appellee, v. THE OFFICE OF THE ILLINOIS SECRETARY OF STATE, Appellant. |
| Docket No. | 117170 |
| Filed | September 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of Chicago, of counsel), for appellant. |
| | Steven M. Shebar, of Oak Park, for appellee. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1        This is a direct appeal from a circuit court order finding section 11-501.6 of the Illinois Vehicle Code (625 ILCS 5/11-501.6 (West 2012)) unconstitutional as applied to this plaintiff. This section provides that a driver who is arrested for a traffic violation related to a fatality or other serious personal injury automatically consents to having his or her blood, breath or urine tested for the presence of alcohol or drugs. Refusal to submit to the testing results in an automatic suspension of the person's driver's license. Here, the circuit court of Cook County found the statute unconstitutional as applied because the police requested the test almost 48 hours after the accident. For the reasons that follow, we affirm.

¶ 2        On May 20, 2012, plaintiff, Kevin McElwain, was involved in a traffic accident. At the time, plaintiff was stopped at an intersection in the left turn lane of northbound Kirk Road in the city of Geneva, Illinois. Plaintiff began to make a U-turn when a motorcycle traveling southbound on Kirk Road came through the intersection and collided with the side of plaintiff's vehicle. Both the driver and passenger of the motorcycle received substantial injuries, and the passenger died as a result of the injuries she sustained. On the date of the accident, plaintiff was neither issued any tickets nor asked to take any chemical tests.

¶ 3        During their investigation of the accident, the police discovered in plaintiff's vehicle rolling papers and a small plastic bag containing a residue that appeared to be cannabis. However, two police officers who were present at the scene of the accident did not think that plaintiff appeared to be under the influence of cannabis.

¶ 4        Two days later, on May 22, plaintiff was asked to present himself at the Geneva police station. He was questioned numerous times about his use of marijuana. Plaintiff admitted that he had smoked marijuana two weeks prior to the accident. The police issued plaintiff a ticket for failing to yield when turning left and also requested that he take a chemical test. The police read the appropriate statutory warnings to plaintiff (see 625 ILCS 5/11-501.6(c) (West 2012)), and plaintiff refused to take the test. The Secretary of State then suspended plaintiff's driver's license for three years.

¶ 5        Plaintiff petitioned the Secretary to rescind the suspension on the basis that the police had waited too long to request the chemical test. Following a hearing, an Administrative Law Judge (ALJ) upheld the suspension. The ALJ reasoned as follows:

"[T]he sum and substance of the Petitioner's argument seems to be that the officers violated his Due Process rights by waiting too long to conduct their investigation into his liability for the collision and his use of marijuana prior to the accident. This presupposes that the officers must demonstrate probable cause to issue the ticket and probable cause of intoxication prior to the collision. However, the statute does not require either to be shown by the state prior to issuance of the Sworn Report. All that is required is that a Uniform Traffic Ticket be issued to the Petitioner, the Petitioner be read the appropriate traffic accident warnings to motorist and the Petitioner refuse to take a chemical test. In this case, all three requirements of the statute were clearly met."

The Secretary subsequently adopted the ALJ's findings of fact and conclusions of law and entered a final administrative order denying plaintiff's request for rescission of the suspension.

¶ 6        Plaintiff filed an action for administrative review. In his complaint, plaintiff contended that his due process and fourth amendment rights were violated when the police sought chemical

testing two days after the accident. Plaintiff argued that section 11-501.6 was applied to him in an unconstitutional manner.

¶ 7    The circuit court agreed with plaintiff and held section 11-501.6 unconstitutional as applied. The court relied primarily on *Fink v. Ryan*, 174 Ill. 2d 302 (1996), in which this court upheld section 11-501.6 against a facial constitutional challenge. The circuit court in *Fink* held that section 11-501.6 authorized searches that violated the fourth amendment and that the statute could not be justified by the "special needs" exception to the fourth amendment.[1] This court reversed and held that the statute authorized searches that fell within the "special needs" exception to the fourth amendment. Central to this court's analysis was its belief that drivers have a diminished expectation of privacy shortly after their involvement in serious traffic accidents. *Id.* at 310-11.

¶ 8    Here, the circuit court noted that the very circumstances that led the *Fink* court to uphold the statute were absent in plaintiff's case. In this case, the police sought the testing two days after the accident, when plaintiff no longer had a diminished expectation of privacy. The circuit court also found that the police were attempting to use the statute as an "unjustified detour around a proper search." The court explained that the special needs exception to the fourth amendment underlies the validity of a section 11-501.6 search. Here, however, the police had ample time to obtain a warrant. The drug paraphernalia was found in plaintiff's car on May 20, but the plaintiff was not called into the police station until May 22. The court found that two days was ample time for the police to obtain a warrant. Finally, the court noted that section 11-401(b-1) (625 ILCS 5/11-401(b-1) (West 2012)), which allows chemical testing of a driver who is arrested after fleeing the scene of an accident, requires that the testing be done within 12 hours of the accident. The court found the special needs exception underlies both section 11-401(b-1) and section 11-501.6, and that it would be illogical to hold that a person who flees the scene is subject to chemical testing for only 12 hours, but that a person who stays at the scene and cooperates with the police is subject to testing for an indefinite amount of time. Thus, the court held that section 11-501.6 was unconstitutional as applied to plaintiff.

¶ 9    We allowed the Secretary's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 10                                ANALYSIS

¶ 11   Decisions of the Secretary of State suspending, revoking, cancelling, or disqualifying any license or permit are subject to the Administrative Review Law. See 625 ILCS 5/11-501.8(h) (West 2014). In an administrative review case, the agency's factual findings are deemed *prima facie* true and correct, and they will not be disturbed on review unless they are against the manifest weight of the evidence. *Gumma v. White*, 216 Ill. 2d 23, 36 (2005). Pure questions of law, however, are reviewed *de novo*. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 (2010). This case involves a pure question of law requiring *de novo* review for two reasons. First, it raises a question of statutory construction, and issues of statutory construction are reviewed *de novo*. *People ex rel. Madigan v. J.T. Einoder, Inc.*,

---

[1] Under the "special needs" exception to the fourth amendment, neither a warrant nor probable cause are required when " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)).

- 3 -

2015 IL 117193, ¶ 27. Second, this case arises from a circuit court order declaring a statute unconstitutional as applied, and our review of a statute's constitutionality is *de novo*. *People v. Richardson*, 2015 IL 118255, ¶ 8.

¶ 12 Before explaining why we agree with the circuit court that section 11-501.6 was applied to plaintiff in an unconstitutional manner, we briefly address plaintiff's contention that this court can simply read a time limit into the statute. This court has explained that it will not reach a constitutional question where the case can be resolved on other grounds. *People v. White*, 2011 IL 109689, ¶ 144. Noting this court's duty to "construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible" (*People v. Shephard*, 152 Ill. 2d 489, 499 (1992)), plaintiff argues that this court should read a time limit into the statute. Here, however, we do not believe that it is "reasonably possible" to do so. This court has explained that the primary rule of statutory construction is to ascertain and give effect to the legislature's intent, and that the best indicator of legislative intent is the statutory language. *People v. O'Connell*, 227 Ill. 2d 31, 36 (2007). Moreover, we may not depart from plain statutory language by reading into the statute exceptions, limitations, or conditions not expressed by the legislature. *People v. Lewis*, 223 Ill. 2d 393, 402 (2006).

¶ 13 There is no question that the plain language of the statute contains no language limiting the time in which the chemical testing must be performed. Moreover, we have clear, unequivocal evidence that the legislature did not intend for there to be a time limit in section 11-501.6. First, when the legislature intends for there to be such a limitation, it says so expressly. As the trial court noted, section 11-401(b-1) of the Vehicle Code, which mandates chemical testing for those who flee the scene of an accident involving serious bodily injury or death, expressly provides for a time limit:

> "(b-1) Any person arrested for violating this Section is subject to chemical testing of his or her blood, breath, or urine for the presence of alcohol, other drug or drugs, intoxicating compound or compounds, or any combination thereof, as provided in Section 11-501.1, *if the testing occurs within 12 hours of the time of the occurrence of the accident that led to his or her arrest*." (Emphasis added.) 625 ILCS 5/11-401(b-1) (West 2012).

Thus, when the legislature intends for the chemical testing to be performed in a specific time period, it provides the time limit expressly. Second, the General Assembly has twice recently considered legislation that would have added a one-hour time limit to section 11-501.6, but the proposed legislation failed each time. See 98th Ill. Gen. Assem., House Bill 2895, 2013 Sess.; 97th Ill. Gen. Assem., House Bill 3876, 2011 Sess. It seems beyond dispute that the legislature does not intend for there to be a time limit in section 11-501.6. Therefore, we may not reasonably construe the statute as containing a time limit.

¶ 14 We next consider whether the trial court correctly found that the statute was applied to plaintiff in an unconstitutional manner. Statutes are presumed constitutional and the party challenging a statute's validity bears the burden of demonstrating a clear constitutional violation. *In re Derrico G.*, 2014 IL 114463, ¶ 54. We will uphold the constitutionality of a statute whenever reasonably possible. *People v. Mosley*, 2015 IL 115872, ¶ 40.

¶ 15 In order to explain why we agree with the trial court's determination, we must briefly review this court's previous decisions considering the constitutionality of section 11-501.6. In

- 4 -

*King v. Ryan*, 153 Ill. 2d 449 (1992), this court held that a previous version of section 11-501.6 was facially unconstitutional. At the time, the statute provided, in relevant part:

> "(a) Any person who drives or is in actual control of a motor vehicle upon the public highways of this State shall be deemed to have given consent to a breath test using a portable device as approved by the Department of Public Health or to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol or other drug content of such person's blood if there is probable cause to believe that such person was the driver at fault, in whole or in part, for a motor vehicle accident which resulted in the death or personal injury of any person." Ill. Rev. Stat. 1989, ch. 95½, ¶ 11-501.6(a).

¶ 16 The statute defined personal injury as "any injury that requires immediate professional attention in either a doctor's office or a medical facility." Ill. Rev. Stat. 1989, ch. 95½, ¶ 11-501.6(g). Moreover, the statute expressly provided that the results of a chemical test performed pursuant to this section could be used as evidence in civil and criminal proceedings. Ill. Rev. Stat. 1989, ch. 95½, ¶ 11-501.6(e).

¶ 17 The plaintiff in that case collided with another car, and the driver of that car and the two passengers in the plaintiff's car were injured. *King*, 153 Ill. 2d at 451. When the police arrived, they detected a strong odor of alcohol on the plaintiff's breath. The police determined that there was probable cause to believe that the plaintiff was at least partly at fault for the accident, so they asked him to accompany them to the police station. At the station, the plaintiff passed a field sobriety test. However, he refused to submit to a breath test. *Id.* at 452. The Secretary of State then suspended the plaintiff's driver's license. *Id.*; see Ill. Rev. Stat. 1989, ch. 95½, ¶ 6-206(a)(31).

¶ 18 The plaintiff petitioned for a rescission of the suspension. Following an administrative hearing, the hearing officer recommended denying the request for rescission. The Secretary adopted the hearing officer's findings of fact and entered an order denying rescission. *King*, 153 Ill. 2d at 453. On administrative review, the circuit court declared the statute unconstitutional on its face because it authorized unreasonable searches and seizures. The court further enjoined the Secretary from enforcing the statute's summary suspension provisions against any driver in the state. *Id.* On direct review, this court affirmed the circuit court's order.

¶ 19 This court explained that whether a search is reasonable under the fourth amendment "depends on the facts and circumstances giving rise to the search as well as the nature of the search itself" (*id.* at 457) and that this determination is made by " 'balancing [the search's] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests' " (*id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979))). In a criminal investigation, that balance will typically require a warrant based upon probable cause. *Id.* However, neither a warrant nor probable cause is required in those limited circumstances where " ' "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." ' " *Id.* (quoting *Griffin*, 483 U.S. at 873, quoting *T.L.O.*, 469 U.S. at 351 (Blackmun, J., concurring in the judgment)). The court further explained that, at a minimum, some quantum of individualized suspicion is generally required. However, in limited circumstances, " 'where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be

placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.' " *Id.* at 458 (quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989)).

¶ 20    This court rejected the Secretary's argument that section 11-501.6 fell within the special needs exception to the fourth amendment. This court explained that in those cases where a search or seizure had been deemed reasonable without some level of individualized suspicion, either the intrusion was minor or the searched person had a diminished expectation of privacy. *Id.* This court held that the subjective intrusion of a section 11-501.6 search is significant. *Id.* at 463. Moreover, this court held that a driver does not have a diminished expectation of privacy simply by virtue of his status as a driver. *Id.* at 460. On this basis, this court distinguished *Skinner*, 489 U.S. 602, in which the United States Supreme Court upheld the constitutionality of a Federal Railroad Administration regulation that required railroad employees to submit to chemical testing of their blood, breath, and urine when they have been involved in a major train accident. In upholding that regulation, the Supreme Court noted that railroad employees have a diminished expectation of privacy based on their "participation in an industry that is regulated pervasively to ensure safety." *Id.* at 627. *King* also distinguished *Skinner* on the basis that there was no dispute that the regulation at issue in *Skinner* was implemented solely to prevent railroad accidents and not to aid in the criminal prosecution of employees. *King*, 153 Ill. 2d at 459. By contrast, section 11-501.6 had as one of its stated purposes the collection of evidence for use in criminal proceedings. *Id.* at 460.

¶ 21    The court acknowledged that the State of Illinois has a compelling interest in protecting its citizens from the hazards posed by intoxicated drivers, and that the summary suspension provisions of the Vehicle Code helped deter people from driving drunk. The court explained that, "[t]o the extent that section 11-501.6 accomplishes these goals without relying on criminal sanctions, it serves the State's interests beyond the need for normal law enforcement." *Id.* at 461. However, the court then held that, because section 11-501.6 is also designed to gather evidence for use in criminal proceedings, it did not fall within the special needs exception. This court further explained that, although the United States Supreme Court had on occasion upheld searches under the special needs exception even where the evidence was used in a criminal trial, the evidence in those cases was found incidentally during a search that was constitutionally valid under the special needs exception. See *Griffin*, 483 U.S. 868; *New York v. Burger*, 482 U.S. 691 (1987); *T.L.O.*, 469 U.S. 325. By contrast, one of the stated purposes of section 11-501.6 was to gather evidence for criminal prosecutions, and thus it did not "fall within the category of special governmental needs outside the normal need for law enforcement." *King*, 153 Ill. 2d at 462. Accordingly, this court upheld the trial court's determination that section 11-501.6 was facially unconstitutional under the fourth amendment. The suspension of the plaintiff's driver's license based upon his refusal to consent to the search was thus invalid, as the statute that authorized the search was unconstitutional. *Id.* at 465.

¶ 22    The legislature subsequently made several amendments to section 11-501.6, and this court again considered the facial constitutionality of the statute in *Fink v. Ryan*, 174 Ill. 2d 302 (1996). In *Fink*, the plaintiff drove into a telephone pole, and he and his passenger were both injured. They were transported from the scene of the accident to the hospital. At the hospital, the police issued the plaintiff a traffic ticket, asked him to consent to a blood test, and warned that his driver's license would be suspended if he refused. Plaintiff consented, and his blood-alcohol content was determined to be 0.14. *Id.* at 306. The plaintiff was charged with

driving under the influence, and the State sent the plaintiff notice that his driver's license would be suspended for three months. The plaintiff filed a declaratory judgment action, asking the circuit court to declare section 11-501.6 facially unconstitutional under the fourth amendment. The circuit court granted the declaratory judgment, finding that the amended statute was not substantively different from the one that this court invalidated in *King*. *Id.* at 307. The Secretary of State appealed directly to this court.

¶ 23    On direct review, this court reversed and held that the statute was constitutional. This court determined that the legislature had made sufficient changes to the statute since *King*. This court summarized the changes to the statute as follows:

> "In response to this court's holding in *King*, the legislature amended the statute by: (1) deleting the requirement that chemical testing be premised upon a driver's fault in causing an accident; (2) deleting the provision that chemical test results could be used in civil and criminal proceedings; (3) adding a requirement that chemical testing be premised upon the issuance of a Uniform Traffic Ticket for a non-equipment traffic offense; and (4) defining with more particularity the types of 'personal injury' that trigger the chemical testing provision." *Id.* at 309.

This court determined that these changes were sufficient to reduce the intrusiveness of section 11-501.6 chemical tests and to ensure that the testing would only be done in situations in which drivers had a reduced expectation of privacy.

¶ 24    First, the court noted that, like the railroad industry in *Skinner*, the Illinois highways are heavily regulated. Thus, while drivers clearly do not lose all expectation of privacy when driving, it is somewhat less than what they enjoy in their homes. *Id.* at 310. More importantly, however, this court believed that by changing the types of personal injuries that would trigger chemical testing, the legislature had ensured that testing would be done only where drivers clearly had a diminished expectation of privacy. *Id.* at 310-11. The version of section 11-501.6 at issue in *King* provided that a driver consented to a chemical test anytime he or she was at fault in a traffic accident that resulted in personal injuries that require "immediate professional attention in either a doctor's office or a medical facility." Ill. Rev. Stat. 1989, ch. 95½, ¶ 11-501.6(g). The legislature changed that to allow chemical testing when there was a "type A injury," which included "severely bleeding wounds, distorted extremities, and injuries that require the injured party to be carried from the scene." 625 ILCS 5/11-501.6(g) (West 1994).

¶ 25    This court explained that, by limiting testing only to those situations when there were more serious injuries, the legislature had ensured that the testing would be done only where the driver had a reduced expectation of privacy:

> "Accidents involving a fatality still trigger the chemical testing provision. However, personal injury requiring only a visit to a doctor's office or a medical facility no longer can be the basis for testing. Thus, the legislature's more particularized definition of type A injuries subjects a driver to chemical testing in only the more serious accidents. *No reasonable driver expects to leave the scene of a serious accident moments after its occurrence. With law enforcement personnel investigating the accident and other personnel attending to the participants' physical conditions, a driver expects less privacy.*" (Emphasis added.) *Fink*, 174 Ill. 2d at 310-11.

The court further explained that an arrest, as evinced by a uniform traffic ticket, is required before there can be chemical testing and that "the movement of an arrested driver is already

subject to restrictions." *Id.* at 311-12. Addressing the intrusiveness of the testing, this court explained that:

> "[A]ny driver subject to chemical testing under the amended statute has a *statutory duty to remain at the scene of the accident*, render aid to injured parties, and exchange basic information with those involved. See 625 ILCS 5/11–401, 11–403 (West 1994). Given the *amount of time required to attend to law enforcement and emergency medical needs*, the addition of a chemical test is minimally intrusive. Thus, by the very nature of the circumstances in which drivers find themselves, the legislature has imposed testing only when a driver's expectation of privacy has been diminished and a test is minimally intrusive." (Emphases added.) *Id.* at 311.

Therefore, "[t]he *intrusion upon an arrested driver is minimal or nonexistent depending upon the length of time required by law enforcement personnel to process the accident scene and emergency medical personnel to attend to the injured parties*." (Emphasis added.) *Id.* at 312.

¶ 26    The court thus concluded that the amended version of section 11-501.6 fell within the "special needs" exception to the fourth amendment: "The State of Illinois has a special need beyond the normal needs of law enforcement to determine whether drivers are chemically impaired and to suspend those drivers' licenses." *Id.* And the court determined that the legislature, in the amended statute, had now ensured that chemical testing would be done only in situations in which the testing was minimally intrusive and the driver's expectation of privacy was lowered. *Id.*

¶ 27    Considering the above authority, it becomes abundantly clear why the statute was applied to plaintiff in an unconstitutional manner. Central to this court's holding in *Fink* was this court's assumption that the testing would be done shortly after the accident. And this assumption was key to this court holding that the statute passed constitutional muster. Both when discussing the intrusiveness of the search and a driver's diminished expectation of privacy, the court discussed the relevance of the driver being at the accident scene. The court explained that the test was less intrusive than it might otherwise be because of the plaintiff's statutory duty to remain at the scene of the accident. Moreover, the court clearly explained that a person subject to the test has a diminished expectation of privacy not only because of his status as a driver, but because of his presence at the scene of a serious accident that is being investigated by the police. These factors were simply not present in the case before us, where the police sought a chemical test two days after the accident. The intrusiveness of the search was no longer lessened for the reasons set forth in *Fink*, nor did plaintiff any longer have the diminished expectation that a driver has in the aftermath of a serious traffic accident. The *Fink* analysis simply does not make sense when applied to a request for a chemical test two days after the accident. Further, the "special need" referenced in *Fink* was the need to suspend the driver's licenses of those who drive while chemically impaired. But a chemical test requested two days after the accident, rather than shortly after the accident, is obviously much less probative of the question whether the person was driving while impaired and carries the risk of serious prejudice by possibly indicating impairment at a time other than at the time of the accident. *Fink* compels a holding that the statute is unconstitutional as applied to plaintiff.

¶ 28    For the first time in this court, the Secretary argues that, despite *King* and *Fink*, this court should be analyzing the constitutionality of the statute solely under an unconstitutional conditions analysis. We note that it was the Secretary who began arguing these cases under the

"special needs" exception to the fourth amendment. See *King*, 153 Ill. 2d at 459. Moreover, the United States Supreme Court used the special needs analysis to assess the constitutionality of a railroad regulation requiring employees to consent to chemical testing when they are involved in major accidents. See *Skinner*, 489 U.S. at 620.

¶ 29 Regardless, however, even if we ignore *Skinner*, *King*, and *Fink* and analyze this case solely under the unconstitutional conditions test, we would still find the statute unconstitutional as applied to plaintiff. Under the doctrine of "unconstitutional conditions," the "government may not require a person to give up a constitutional right *** in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship" to the right. *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). The Seventh Circuit has explained that the meaning of the doctrine is simply that "conditions can lawfully be imposed on the receipt of a benefit—conditions that may include the surrender of a constitutional right, such as the right to be free from unreasonable searches and seizures—provided the conditions are reasonable." *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000). The Supreme Court has adopted a two-part test for evaluating unconstitutional conditions questions: first, is there an essential nexus between the condition burdening rights and a legitimate state interest and second, is there a "rough proportionality" between the burden on the individual and the harm the government seeks to remedy through the condition. *Dolan*, 512 U.S. at 386-91.

¶ 30 The Secretary contends that there is no question that the State can condition the receipt of a driver's license on a driver's agreement to consent to a chemical test if he or she is involved in a serious motor vehicle accident, as there is obviously an essential nexus between the State's interest in protecting the public from intoxicated drivers and requiring consent to a chemical test following an arrest for a moving violation related to a serious accident. While it seems beyond dispute that this is the case, the problem is that the essential nexus no longer exists when the test is requested two days after the accident. In other words, while it is not difficult to see the essential nexus between the State's interest in protecting the public from *intoxicated drivers* and requiring a driver's consent to a chemical test when he is arrested for a moving violation *shortly after* his involvement in a serious accident, there is clearly not such a nexus between that legitimate state interest and a chemical test remote in time from the accident. Thus, even assuming the statute is facially valid under the unconstitutional conditions test, the statute was still applied to plaintiff in an unconstitutional manner.

¶ 31 In closing, we decline to draw a bright line as to how soon after the accident the testing must be requested. This is a task best left to the legislature, while it would be this court's job to determine if the line drawn by the legislature is sufficient to pass constitutional muster.

¶ 32                                                 CONCLUSION

¶ 33 For all of the above reasons, we affirm the circuit court's decision finding section 11-501.6 unconstitutional as applied to plaintiff.

¶ 34 Affirmed.