2023 IL App (2d) 230006
No. 2-23-0006
Opinion filed November 21, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| HABDAB, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-MR-514 |
| | ) | |
| THE COUNTY OF LAKE and THE | ) | |
| VILLAGE OF MUNDELEIN, | ) | Honorable |
| | ) | Jacquelyn D. Melius, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Birkett and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Habdab, LLC, filed a two-count declaratory judgment action against defendants, the County of Lake (county) and the Village of Mundelein (village). In count I, directed against the county and the only count at issue in this appeal, plaintiff sought to invalidate an intergovernmental agreement between the county, the village, and several other municipalities. The agreement established construction funding for future highway improvements in the county's central area and provided that a portion of the construction costs would be reimbursed to the county from impact fees collected from developers, including plaintiff, in the central area. Plaintiff alleged that the agreement violated the Road Improvement Impact Fee Law (Impact Fee Law) (605 ILCS 5/5-901 *et seq.* (West 2022)) and that it had an interest in avoiding payment of unconstitutional

fees. The county and plaintiff filed cross-motions for summary judgment, and the trial court granted the county's motion, denied plaintiff's motion, and entered judgment in the county's favor and against plaintiff on count I. The court subsequently made findings pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Plaintiff appeals, arguing that (1) the Impact Fee Law applies to the agreement's fees because they meet the statutory definition of impact fees, (2) the agreement's fees do not comply with the Impact Fee Law because they are assessed on a per-acre basis and, thus, are not specifically and uniquely attributable to the developed property's actual impact on the roadway system, (3) the doctrine of unconstitutional conditions bars the fees because they constitute an unconstitutional taking, and (4) plaintiff never agreed to pay the unconstitutional impact fees. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      A. Central Lake County Area Transportation Improvement Intergovernmental Agreement

¶ 4      In 2009, the county and three municipalities (the villages of Mundelein, Grayslake, and Libertyville) entered into an intergovernmental agreement, the Central Lake County Area Transportation Improvement Intergovernmental Agreement (IGA). Its purpose was to establish construction funding for future highway improvements in the central Lake County area. The improvements were intended to address existing and future traffic demands. Under the IGA, the county agreed to design and construct road improvements in exchange for a portion of the construction costs being reimbursed from fees collected from developers within the area, upon the occurrence of certain triggers. The parties to the IGA agreed that developers of future developments would be collectively assessed 50% of the construction costs of the road improvements and the remaining 50% of the costs would be borne by the county as a "public benefit."

¶ 5 Specifically, as relevant here, the IGA provides that the villages, "as a condition of annexation of any unincorporated territory located within the Central Lake County Area and within a Highway Improvement Area," would "require the execution of an annexation agreement, which annexation agreement shall include among its terms the payment of FEES in accordance with this Agreement." The IGA establishes six "Highway Improvement Areas" within the central Lake County area, and the parties (to the IGA) created a schedule of fees for each subarea. The fees for each subarea would be divided by the number of developable areas within each subarea and assessed against future developments, based on the number of acres contained within each development.

¶ 6 The fees would be collected "prior to granting Final Development Approval." The term "Final Development Approval" was defined as "the latter of the grant of Zoning Relief, annexation approval, or final plat approval." If none of these conditions apply, the fees are collected upon "the issuance of the earlier of a grading permit, a site development permit, a building permit, or a certificate of occupancy."

¶ 7 B. Annexation Agreements Between Plaintiff and the Village

¶ 8 Plaintiff and the village, a home rule municipality, entered into three successive annexation agreements. Parcel 1, consisting of 6.6 acres, was annexed via an annexation agreement, dated September 11, 2018, for a "clean fill" commercial development project.[1] Parcel 2, consisting of 10.03 acres, was annexed via an amendment to the annexation agreement, dated July 22, 2019. Parcel 3 was annexed through a second amendment, dated April 26, 2021, about eight months after the complaint was filed in this case. Neither the annexation agreement nor the first amendment included any provision in which plaintiff agreed to pay the IGA fees.

---

[1]Third parties pay a fee to plaintiff to truck in fill to be deposited on the parcels.

¶ 9    The second amendment provided for the annexation of parcel 3, consisting of 35 acres, into the village. It addressed the payment of fees arising from the IGA as a result of any "Final Development Approval." The amendment stated that the parties agreed that any fees, as defined in the IGA and as a result of any final development "or otherwise, relative to any or all of the Combined Parcel," were the owner's responsibility to pay to the county. However, the village and plaintiff agreed that plaintiff would not be required to pay any fees while the lawsuit challenging the county's ability to charge and collect the fees remained pending. The second amendment also provided that plaintiff agreed to indemnify and hold harmless the village from 50% of attorney fees and costs, up to $50,000, the village incurred in connection with the litigation; this included such amounts associated with any claims made by any IGA party, any settlement, any claim, and any judgment against the village by the county, plaintiff, or any other IGA party, relating to the IGA and/or the annexation agreements/amendments and the village's actions or omissions. It also stated that the expected completion date of plaintiff's improvements on the three parcels was December 31, 2035.

¶ 10    The three parcels were zoned agricultural prior to annexation; afterward, they were reclassified into the R-1 "Single Family Residential Zoning District." Plaintiff submitted to the village various plans and plats of annexation.[2]

¶ 11    On September 19, 2019, the county informed the village that plaintiff owed $191,581.90 in fees for parcels 1 and 2 pursuant to the IGA. It asserted that the fees must be paid before the county would issue a construction access permit for the properties.

---

[2]The parcels are located south of Petersen Road, north on Winchester Road, and east of Illinois Route 83.

¶ 12                    C. Plaintiff's Complaint and Other Filings

¶ 13    On August 25, 2020, plaintiff filed a declaratory judgment complaint against the county (count I) and the village (count II), seeking a declaration that it was not obligated to pay the fees under the IGA on the basis that the county had not complied with the Impact Fee Law. Also at this time, plaintiff was seeking to annex parcel 3 into the village. Specifically, as to count I, which is at issue in this appeal, plaintiff asserted that the IGA fees did not meet the requirements of the Impact Fee Law and, thus, the county lacked the authority to impose them and could not condition the issuance of a permit or other discretionary benefit upon plaintiff's agreement to pay the fees. It also alleged that it had a tangible interest in avoiding the payment of unconstitutional "road improvement impact fees." 605 ILCS 5/5-903 (West 2022).

¶ 14    On October 5, 2022, the village filed an answer, affirmative defenses, and a counterclaim against plaintiff, seeking a declaration that plaintiff must pay any IGA fees related to all three parcels. It also filed on that date a third-party complaint against the county, seeking a declaration that the IGA fees were not yet due because final development approval had not been granted by the village for parcels 1 or 2. On July 6, 2021, the village voluntarily dismissed its counterclaim against plaintiff, based on the agreement contained in the second amendment to the annexation agreement, which provided that the village shall voluntarily dismiss its counterclaim within 10 days of the parties' execution of the second amendment.

¶ 15    On May 24, 2021, the county filed a third-party counterclaim against the village, asserting breach of contract and unjust enrichment and seeking recovery of unpaid IGA fees. It asserted that the village breached the IGA by not including a provision in the annexation agreement or the first amendment that required plaintiff to pay the IGA fees. It sought $191,581.90 in unpaid fees.

¶ 16                    D. Summary Judgment Motions

¶ 17    On June 29, 2022, the county moved for summary judgment as to count I of plaintiff's declaratory judgment complaint. It argued that the IGA fees, as they related to plaintiff and its three parcels, were not subject to the Impact Fee Law because they "flow" from an annexation agreement entered between the village and plaintiff and are, therefore, enforceable.[3] The county also asserted that the fees under the IGA are not "road improvement impact fees" under the Impact Fee Law because they are not conditioned on the issuance of a building permit or a certificate of occupancy. *Id.*

¶ 18    Plaintiff, on August 23, 2022, filed a cross-motion for summary judgment on count I of its complaint, arguing that the IGA fees are unenforceable against it because they are unconstitutional and violate the Impact Fee Law. Specifically, plaintiff asserted that the county had violated the federal and Illinois constitutions and that the IGA fees are "road improvement impact fees." The IGA parties coerced landowners, it alleged, to "agree" to pay the fees, as a condition of receiving any of several forms of land use relief from the applicable government unit. In this way, the county presumed to escape the Impact Fee Law because parties may agree to contract away their constitutional rights. Plaintiff also asserted that the fees constituted "road improvement impact fees" and that the IGA is an illegal attempt to avoid the Impact Fee Law's requirements, because the roadway improvement impact fees assessed would not be specifically and uniquely attributable to the traffic demands generated by a particular development but, instead, would be assessed on a per-acre basis.

---

[3]The county asserted that the clean fill operation was proceeding on all three parcels, with an average of 100 truckloads of fill being brought to them daily. No village approvals remained pending.

¶ 19    On November 1, 2022, the trial court granted the county's summary judgment motion and denied plaintiff's summary judgment motion. It found that the IGA fees were not subject to the Impact Fee Law and could be collected via an annexation agreement. Plaintiff appeals.

¶ 20                                    II. ANALYSIS

¶ 21    Plaintiff argues that the trial court erred in denying its summary judgment motion and granting the county's motion. It contends that the Impact Fee Law applies to this case because the fees the county seeks to assess on developers to compensate for impacts of their developments on the public roadway system are unquestionably "road improvement impact fees" under the statute. Plaintiff further argues that, because the IGA fees are assessed on a per-acre basis and are not specifically and uniquely attributable to its property's actual impact on the roadway system, the fees do not comply with the Impact Fee Law and, therefore, violate its constitutional rights under the takings clauses of the fifth amendment to the United States Constitution and section 2 of article 1 of the Illinois Constitution. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 2. It further contends that neither the county nor the village may condition plaintiff's receipt of a discretionary benefit, such as annexation or the issuance of an access permit, on plaintiff's agreement to give up its constitutional rights. Finally, plaintiff argues that it never agreed to pay the unconstitutional impact fees. For the following reasons, we affirm the trial court's ruling.

¶ 22    Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *First of America Bank v. Netsch*, 166 Ill. 2d 165, 176 (1995). When parties file cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*,

2012 IL 112064, ¶ 28. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.* We review *de novo* a trial court's ruling on a motion for summary judgment. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 23    This case involves a question of statutory interpretation. The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 74. The most reliable indicator of that intent is the language of the statute itself. *Id.* In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. *Id.* If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. *Id.* We review *de novo* issues of statutory interpretation. *Id.* ¶ 73.

¶ 24                            A. Relevant Statutes

¶ 25    We begin with the relevant statutes. The Illinois Municipal Code allows municipalities to enter into annexation agreements with owners of land in unincorporated territories. 65 ILCS 5/11-15.1-1 (West 2022). Furthermore, such agreements may provide for contributions of either land or monies or both to any municipality or other units of local government. *Id.* § 11-15.1-2(d).

¶ 26    The Impact Fee Law authorizes certain units of local government[4] to implement "road improvement fee" ordinances and resolutions to supplement other funding sources so that the burden of paying for such improvements is allocated fairly and equitably. 605 ILCS 5/5-902 (West

_____

[4]"Units of local government" means "counties with a population over 400,000 and all home rule municipalities." 605 ILCS 5/5-903 (West 2022).

2022). In so doing, the statute promotes economic growth and preserves local elected officials' adoption of ordinances and resolutions that adhere to minimum standards and procedures. *Id.*

¶ 27    Section 5-904 of the Impact Fee Law provides, in relevant part:

> "No impact fee shall be imposed by a unit of local government within a service area or areas upon a developer for the purposes of improving, expanding, enlarging or constructing roads, streets or highways directly affected by the traffic demands generated from the new development unless imposed pursuant to the provisions of this Division. *An impact fee payable by a developer shall not exceed a proportionate share of costs incurred by a unit of local government which are specifically and uniquely attributable to the new development paying the fee in providing road improvements*, but may be used to cover costs associated with the surveying of the service area, with the acquisition of land and rights-of-way, with engineering and planning costs, and with all other costs which are directly related to the improvement, expansion, enlargement or construction of roads, streets or highways within the service area or areas as designated in the comprehensive road improvement plan." (Emphasis added.) *Id.* § 5-904.

¶ 28    Section 5-911 addresses the timing of the assessment of impact fees and provides:

> "Impact fees shall be assessed by units of local government *at the time of final plat approval or when the building permit is issued when no plat approval is necessary*. No impact fee shall be assessed by a unit of local government for roads, streets or highways within the service area or areas of the unit of local government if and to the extent that another unit of local government has imposed an impact fee for the same roads, streets or highways." (Emphasis added.) *Id.* § 5-911.

¶ 29    The statute prescribes the timing of the payment of impact fees. Impact fees imposed on a residential development, consisting of one single-family residence, are "payable as a condition to the issuance of the building permit." *Id.* § 5-912. As to all other types of new development, the fees are "payable as a condition to the issuance of the certificate of occupancy, provided that the developer and the unit of local government enter into an agreement designating that the developer notify the unit of local government that the building permit or the certificate of occupancy has been issued." *Id.* If agreed to by the unit of local government and the person paying the fees, they may be paid at the time the building permit is issued or at an earlier stage of the development. *Id.*

¶ 30    The statute defines a "road improvement impact fee" as

"any charge or fee levied or imposed by a unit of local government as a condition to the issuance of a *building permit or a certificate of occupancy* in connection with a new development, when any portion of the revenues collected is intended to be used to fund any portion of the costs of road improvements." (Emphasis added.) *Id.* § 5-903.

¶ 31    The Impact Fee Law preempts home rule powers and functions. *Id.* § 5-919.

¶ 32                            B. Application of Impact Fee Law to IGA Fees

¶ 33    Plaintiff argues first that the IGA fees are "road improvement impact fees" under the Impact Fee Law. It disputes the county's assertion, based on the definition of that term included in the statute's definition section, that the Impact Fee Law applies only to "road improvement impact fees" that are collected at the time a "building permit or certificate of occupancy" is issued. *Id.* § 5-903. It contends that the county's assertion is based on an arbitrary distinction between a "road improvement impact fee" as defined in the Impact Fee Law and the fees the county seeks to collect under the IGA. Plaintiff argues that the definition must be read more broadly and in conjunction with the phrase, "in connection with a new development." *Id.* Plaintiff also asserts that

the county's interpretation leads to an absurd result, in that a municipality could avoid the statute by making fees payable upon an event other than the issuance of a building permit or a certificate of occupancy. It posits that there would be no need to adopt a comprehensive road plan, for example, under this scenario. Instead, a municipality could merely require a developer to pay impact fees at the time it submits its *application* for a building permit rather than when the permit is *issued*.

¶ 34    Plaintiff also contends that the remainder of the statute guides the definition it proposes. Plaintiff points to the statutory provision addressing the timing of the assessment of impact fees, which requires that they be assessed at the time of final plat approval or, if no approval is necessary, when a building permit is issued. *Id.* § 5-911. Plaintiff argues that this provision ensures that the fees are assessed when the development is far enough along that the plan is final or building permits are issued, thus assuring that the fees will be related to the actual development. Conversely, here, it contends, the fees the county attempts to impose on plaintiff's property were assessed in 2009, long before plaintiff sought to annex its property into the village, let alone develop its property.

¶ 35    Further, plaintiff asserts that the statutory provision addressing the payment of impact fees, which requires that the fees shall be payable as a condition to the issuance of a building permit or a certificate of occupancy, shows that the language in the definitions section of the Impact Fee Law was not intended to be limiting. *Id.* § 5-912. In plaintiff's view, the legislature did not intend the statute to apply only to "road improvement impact fees" that a unit of local government has independently decided to impose on its developers at the stage of development when the issuance of a building permit or a certificate of occupancy is imminent, as opposed to any other stage. Rather, plaintiff contends, that language is in the definitions section because that stage is when

units of government are required to *collect* "road improvement impact fees." Plaintiff also points to language in the same provision that allows parties to agree to payment of impact fees before the building permit is issued. *Id.* Thus, it reasons, the Impact Fee Law clearly applies to "road improvement impact fees" that are imposed pursuant to an agreement, including an annexation agreement. Plaintiff argues that the IGA fees are not removed from the statute's purview just because the county imposes the fees when a property is annexed through a voluntary annexation agreement instead of  when a building permit or a certificate of occupancy is issued.

¶ 36     Plaintiff points to section 5-904, which addresses the purpose of the statutory fees. It contends that the IGA fees' purpose is the same as that of "road improvement impact fees" under the Impact Fee Law. The purpose of IGA fees is to fund roadway improvement projects that will be required so county highways can meet the demands of increased traffic generated from future development. The purpose of "road improvement impact fees" is to improve, expand, enlarge, or construct roads, streets, or highways directly affected by the traffic demands generated from the new development. *Id.* § 5-904.

¶ 37     The county responds that the term "road improvement impact fee" in the statute means the fee imposed as a condition to the issuance of a building permit or a certificate of occupancy. Here, however, the fees that the village would be required to collect from plaintiff under the IGA do not involve the exchange of a fee for the issuance of a building permit or a certificate of occupancy. Rather, the county contends, the fees involve the voluntary annexation of the plaintiff's properties into the village as authorized by the Illinois Municipal Code. Thus, it reasons, the IGA fees, as they relate to plaintiff's properties, are not "road improvement impact fees" and do not fall within the purview of the Impact Fee Law.

¶ 38　The trial court found persuasive *Shore Development Co. v. City of Joliet*, 2011 IL App (3d) 100911-U, an unpublished order upon which the county had relied.[5] The trial court determined, as had the court in *Shore*, that the Impact Fee Law did not apply, because the fees at issue did not constitute "road improvement impact fees" under the Impact Fee Law since they were not levied upon the issuance of a building permit or certificate of occupancy. See *id.* ¶ 29 (noting that the case before it did not involve the charge of a fee in exchange for the issuance of a building permit or a certificate of occupancy but, rather, the initial annexation of the subject property and the approval of a final plat). The trial court here further found that the annexation agreement or the IGA controlled for determining fees.

¶ 39　We likewise agree that the IGA fees do not constitute "road improvement impact fees" under the Impact Fee Law. The IGA provides that payment of the highway improvement fees thereunder is a condition of annexation into one of the villages. It also provides that the party having jurisdiction over a development is responsible for collecting the fees before granting "Final Development Approval" (defined as the latter of the grant of zoning relief, annexation approval, or final plat approval; if none of the foregoing apply, then the issuance of the earlier of a grading permit, a site development permit, a building permit, or a certificate of occupancy).

---

[5]Illinois Supreme Court Rule 23(e) (eff. Feb. 1, 2023) prohibits parties from citing as persuasive authority nonprecedential orders entered before January 1, 2021. Thus, the county should not have cited *Shore*, which was filed in 2011, for any purpose. See *Katz v. Hartz*, 2021 IL App (1st) 200331, ¶ 41. Regardless, courts may adopt the reasoning of unpublished orders. See *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612, ¶ 22. Our analysis, thus, is unaffected by the county's reliance on *Shore*.

¶ 40    The Impact Fee Law, again, defines "road improvement impact fees" as

"any charge or fee levied or imposed by a unit of local government as a condition to the issuance of a *building permit or a certificate of occupancy* in connection with a new development, when any portion of the revenues collected is intended to be used to fund any portion of the costs of road improvements." (Emphasis added.) 605 ILCS 5/5-903 (West 2022).

¶ 41    There is no ambiguity in the statutory definition. The phrase "in connection with a new development" does not broaden the definition, as plaintiff suggests. We also find unavailing plaintiff's assertion that the county's position is based on an arbitrary distinction between a "road improvement impact fee," as defined in the Impact Fee Law, and the fees the county seeks to collect under the IGA. We believe that, if the legislature intended to encompass into the Impact Fee Law every conceivable exaction for highway improvements, it would not have limited the definition of "road improvement impact fees." That the statute encompasses only fees levied as conditions to the issuance of either a building permit or a certificate of occupancy reflects that the legislature selected a point in time distinct from and later than, as relevant here, annexation.

¶ 42    Nor can we conclude that the remainder of the statute contains language supporting plaintiff's position. Section 5-911, which addresses the timing of the fee assessment and provides that "road improvement impact fees" shall be assessed "at the time of final plat approval or when the building permit is issued when no plat approval is necessary" (*id.* § 5-911), does not act to broaden the definition of "road improvement impact fees," which, again, are limited to fees "levied or imposed *** as a condition to the issuance of a building permit or a certificate of occupancy in connection with a new development." *Id.* § 5-903. The two conditions in the definition must still be met.

¶ 43    Section 5-912 also does not impact the definition of "road improvement impact fees." That section addresses the timing of payment of "road improvement impact fees" and sets forth methods of payment that are intended to minimize the effect of impact fees on the persons making the payments. *Id.* § 5-912. For residential developments, it provides that fees "shall be payable as a condition to the issuance of the building permit." *Id.* For all other types of developments, fees "shall be payable as a condition to the issuance of the certificate of occupancy." *Id.* Finally, the section provides that the parties may agree to the payment of the fees "at the time when the building permit is issued *or at an earlier stage of development*." (Emphasis added.) *Id.* We believe that this language does not reflect that the legislature intended to broaden the definition of "road improvement impact fees." The fact that parties may agree that the statutory fees may be *paid* earlier than the default times under the provision does not in any way show that the *definition* includes fees other than those that are "levied or imposed *** as a condition to the issuance of a building permit or a certificate of occupancy in connection with a new development." *Id.* § 5-903.

¶ 44    Even if, as plaintiff asserts, the county and the villages entered into the IGA to avoid the Impact Fee Law's requirements, we cannot ignore a statutory definition with very specific language. Because we conclude that the IGA fees do not constitute "road improvement impact fees," the Impact Fee Law has no relevance to our decision. Accordingly, we need not address plaintiff's arguments concerning compliance with that statute.

¶ 45                          C. Doctrine of Unconstitutional Conditions

¶ 46    Next, plaintiff argues that the doctrine of unconstitutional conditions bars the county's attempt to circumvent the Impact Fee Law by agreeing that the village will require plaintiff to "agree" to pay the IGA fees. Specifically, plaintiff contends that, despite the IGA, the county and the village cannot agree between themselves to do away with plaintiff's constitutional right (*i.e.*,

to be required to pay only impact fees that are specifically and uniquely attributable to its development, pursuant to the takings clauses of the federal and Illinois Constitutions) in exchange for a discretionary governmental benefit (*i.e.*, annexation). Further, plaintiff contends that, if the fees are not specifically and uniquely attributable to the development activity, it amounts to confiscation of private property, rather than reasonable regulation under the police power. Plaintiff maintains that, here, it was faced with a Hobson's choice (*i.e.*, an apparent free choice when there is no real alternative) of either (1) accepting the IGA's per-acre fee without any input on its behalf nor any consideration as to what its actual use of the property will be or (2) foregoing the discretionary benefit of annexing its property into the village. For the following reasons, we find plaintiff's argument unavailing.

¶ 47 Preliminarily, we note that plaintiff agreed at oral argument that municipal/county enactments are presumptively constitutional. See, *e.g.*, *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20 (further noting the challenging party has the burden to establish a constitutional violation). Also, courts construe enactments to uphold their validity and constitutionality, where that can reasonably be done. See, *e.g.*, *In re Commitment of Walker*, 2014 IL App (2d) 130372, ¶ 20.

¶ 48 " '[T]he unconstitutional conditions doctrine *** vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up.' " *Willie Pearl Burrell Trust v. City of Kankakee*, 2016 IL App (3d) 150655, ¶ 36 (quoting *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 604 (2013)).

> "Under the doctrine of 'unconstitutional conditions,' the 'government may not require a person to give up a constitutional right *** in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship' to the

right. *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). The Seventh Circuit has explained that the meaning of the doctrine is simply that 'conditions can lawfully be imposed on the receipt of a benefit—conditions that may include the surrender of a constitutional right, such as the right to be free from unreasonable searches and seizures—provided the conditions are reasonable.' *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000). The Supreme Court has adopted a two-part test for evaluating unconstitutional conditions questions: first, is there an essential nexus between the condition burdening rights and a legitimate state interest and second, is there a 'rough proportionality' between the burden on the individual and the harm the government seeks to remedy through the condition. *Dolan*, 512 U.S. at 386-91." *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 29.

¶ 49 Here, plaintiff notes that no developer was a party to the IGA and that the IGA establishes fees and leaves no opportunity for a developer to change the amount of such fees. Thus, it maintains, the fees are not the result of any bargain between the developer and the municipality into which it seeks to annex. Instead, they are, according to plaintiff, a condition imposed on the developer by the municipality, on behalf of the county, and the developer has no ability to negotiate the fees. Accordingly, the practice, it asserts, is unconstitutional.

¶ 50 Plaintiff further asserts that, in essence, the county is attempting to use the IGA to circumvent the Impact Fee Law by using the village as the enforcer of the county's unconstitutional impact fees. The IGA, it notes, provides that, if plaintiff seeks to obtain a discretionary benefit from the village, the village must "require" plaintiff to "agree" to pay the county's unconstitutional impact fees. However, it asserts, the unconstitutional conditions doctrine prohibits the village from requiring plaintiff to give up its right to be free from unconstitutional takings in exchange for a

discretionary benefit. Plaintiff maintains that it has no obligation to pay the county any "road improvement impact fees" other than those the county may assess in compliance with the Impact Fee Law, *i.e.*, "road improvement impact fees" with an actual nexus to the impact on public roadways attributable to plaintiff's development. 605 ILCS 5/5-904 (West 2022). Thus, it reasons, the county's argument that the IGA does not have to honor plaintiff's constitutional rights because parties may agree to contract away their constitutional rights does not weigh in favor of the IGA's validity.

¶ 51 Plaintiff further asserts that it has a right to be required to pay only those impact fees that are specifically and uniquely attributable to its development, pursuant to the takings clauses of the federal and Illinois constitutions. This is the constitutional right, it contends, the IGA is designed to force landowners to "agree" to contract away. Plaintiff also again raises the Impact Fee Law, arguing that it provides the procedure for satisfying the "rough proportionality" requirement. Its purpose, plaintiff contends, is to provide a procedure for ensuring that roadway improvement impact fees are specifically and uniquely attributable to the development, which *is* the "rough proportionality" required in Illinois. The county, plaintiff argues, does not get to ignore the Impact Fee Law and deem that its own procedure is enough of a "rough proportionality," such that the statute does not need to be followed.

¶ 52 The county responds that plaintiff does not have a right to annex property into a municipality, which involves a voluntary, arm's length bargained-for contractual arrangement between a municipality and a property owner. Plaintiff, it contends, was not required to annex into the village, and the village was not obligated to enter into an annexation agreement with plaintiff. In choosing to annex the three parcels into the village to conduct its commercial clean fill development, the county asserts, plaintiff freely agreed in the second amendment to pay the IGA

fees for the parcels upon termination of the litigation in favor of the county. The county argues that, because this matter involves fees provided pursuant to a voluntary annexation agreement, as authorized by section 11-15.1-2(d) of the Illinois Municipal Code, the doctrine of unconstitutional conditions has no application.

¶ 53    We agree with plaintiff that it has referenced a constitutional right, specifically, "the right to receive just compensation when property is taken for a public use." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). However, we disagree with plaintiff that the unconstitutional conditions doctrine applies.

¶ 54    Turning to the first requirement under the doctrine, we conclude that there is an essential nexus between the condition burdening rights and a legitimate state interest. As to the latter, "the need to minimize or reduce traffic congestion is a legitimate State interest." *Northern Illinois Home Builders Ass'n, Inc. v. County of Du Page*, 165 Ill. 2d 25, 32 (1995). Further, "a nexus exists between preventing further traffic congestion and providing for road improvements to ease that congestion." *Id.* The IGA provides that, as property develops in the central Lake County area, residents will benefit from highway improvements that ensure traffic is efficiently transported through the area, and it provides for construction funding for such improvements.

¶ 55    Second, we conclude that there is a rough proportionality between the burden on plaintiff and the harm the county (via the village) seeks to remedy through the condition. Plaintiff misstates the proper standard, asserting that the IGA fees must be specifically and uniquely attributable to its development. Our supreme court has noted that rough proportionality is the proper standard under the unconstitutional conditions doctrine (which is a federal doctrine). *McElwain*, 2015 IL 117170, ¶ 29 (citing *Dolan*, 512 U.S. at 386-91). This standard requires a lesser degree of connection between the exaction and the projected impact of the new development than the

specifically-and-uniquely-attributable standard, which applies in takings challenges under the Illinois Constitution. *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 33. No precise mathematical calculation is required, but the municipality must make some sort of individualized determination that the required dedication is related in both nature and extent to the impact of the proposed development. *Dolan*, 512 U.S. at 391.

¶ 56 We believe that there is a rough proportionality between the IGA fees assessed against plaintiff's parcels and the road improvements. The IGA's purpose is to establish construction funding for future highway improvements in the central Lake County area. The improvements are intended to address existing and future traffic demands. Under the IGA, the county agreed to design and construct road improvements in exchange for a portion of the construction costs being reimbursed from fees collected from developers within the area, upon the occurrence of certain triggers. It established six "Highway Improvement Areas" within the central Lake County area, and the parties created a schedule of fees for each subarea. The fees for each subarea are divided by the number of developable areas within each subarea and are assessed against future developments, based on the number of acres contained within each development. The three parcels were zoned agricultural prior to annexation; afterward, they were reclassified into the R-1 "Single Family Residential Zoning District." Plaintiff's clean fill operation, which operates on all three parcels, involves about 100 truckloads of fill per day (as of March 2022) being transported to the parcels.

¶ 57 In summary, because both of its requirements are met, the unconstitutional conditions doctrine does not apply here to render the fees a taking without just compensation.

¶ 58 D. Annexation Agreement

¶ 59    Finally, plaintiff argues that it has *not* agreed, via the annexation agreements, to give up its constitutional right to pay only impact fees genuinely attributable to the impact its property has on the roadways. It notes that the first annexation agreement between it and the village does not mention the county's impact fees and contains no promise by plaintiff to pay them. Similarly, it notes, the first amendment to the annexation agreement does not mention the IGA fees and contains no promise by plaintiff to pay them. The second amendment to the annexation agreement contains references to the IGA fees, plaintiff notes, but it also has language providing that, *if its challenge to the fees fails, it agrees to pay the fees to the village*.[6] Plaintiff argues that the foregoing is not a knowing and voluntary agreement to waive a constitutional right. Rather, it is an express preservation of a judicial challenge seeking to enforce that right. It also contends that the trial court's judgment in the county's favor cannot stand, if the judgment turned on the court's finding that plaintiff "agreed" to pay the fees in the annexation agreement, where, in plaintiff's view, such a finding is erroneous.

¶ 60    In this appeal, plaintiff challenges the trial court's summary judgment rulings by raising arguments based on the Impact Fee Law and the unconstitutional conditions doctrine. We have rejected those arguments. (Neither our discussion of the Impact Fee Law nor the unconstitutional conditions doctrine rely on any "agreement" to pay the IGA fees.) As plaintiff acknowledges, if its challenge to the county's impact fees fails and the fees are upheld, as has occurred here, then

---

[6]Similarly, in its reply brief, plaintiff argues that the second amendment cannot be read to reflect its agreement to the fees but is, rather, an acknowledgement "that, if plaintiff loses this lawsuit, and the County's fees are deemed constitutional, then the fees would have to be paid, and plaintiff would have to pay them."

plaintiff must pay the fees to the village. Thus, we reject plaintiff's argument that it never agreed to pay the IGA fees.

¶ 61                                   III. CONCLUSION

¶ 62    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 63    Affirmed.

_____

*Habdab, LLC v. County of Lake*, **2023 IL App (2d) 230006**

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-MR-514; the Hon. Jacquelyn D. Melius, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | Robert T. O'Donnell and Hayleigh K. Herchenbach, of O'Donnell Callaghan LLC, of Libertyville, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (John P. Christensen and Gunnar B. Gunnarsson, Assistant State's Attorneys, of counsel), for the People. |
| | No brief filed for other appellee. |

_____